JARVIS F. BURROWS *v.* *The Estate of* REUBEN D. STEVENS.

*Evidence. Guardian and Ward.*

S. had boarded and clothed the plaintiff's wards by agreement, and the plaintiff had charged the same, with other things furnished the wards by S., in his guardian account with the probate court. After the death of S. the plaintiff presented a claim against his estate, and the defendant filed an offset, and in support thereof, offered said account as taken from the probate record, with an offer of other proof that some of the items therein were still due from the plaintiff. *Held*, that the account was evidence as an admission by the plaintiff that his wards had had of S. the amount of the bills therein charged, and that he, as guardian, was once liable for them.

The plaintiff not being a competent witness, his agent who prepared said guardian account could not be allowed to testify as to the plaintiff's explanations of the charges when the account was being prepared; it was not part of the *res gestae*.

THIS was an appeal from the allowance of commissioners upon the estate of R. D. Stevens. The declaration in the county court was in general assumpsit. The case was referred and the referee, among other things, reported that, the defendant presented in offset the claims set forth in a paper marked "defendant's specification." And to support the same offered in evidence the paper marked *A*, which is an extract from the probate records of the district of Marlboro, of an account rendered by the plaintiff as guardian of the minor heirs of Erastus Hubbard, deceased. The said R. D. Stevens married the widow of said Hubbard, and the children went with their mother and resided with her and her husband, Stevens, the plaintiff having been appointed their guardian. The children were boarded and clothed by Stevens, and he was paid by the plaintiff out of the property of his wards. And the bills were usually settled and paid yearly, at or nearly the first of April, and the guardian charged in his account with the probate court the sums so paid. The plaintiff's wards owned one-half of the house occupied by Stevens, he being the owner of the other half; the barns and outbuildings standing upon the farm formerly owned by Erastus Hubbard were owned partly by Stevens and partly by the plaintiff's wards, but the farm and build-

ings were divided so that Stevens had his part in severalty, the house being divided in the center, and the outbuildings being separated.

The expenditures for repairs, charged in the defendant's offset, were for repairs upon said buildings made, as the defendant claimed, under the direction of the plaintiff, as guardian of said minors.

Paper *A* was introduced with an offer to accompany it with other proof tending to show that a part of the items named therein, as having been paid to Stevens, or furnished by him, were still due from the plaintiff to his estate. The plaintiff objected to the paper, not on account of the form or authenticity of the proof, but for the reason that the evidence so offered was inadmissible in any form. And the paper was admitted under the objection.

The plaintiff called Asa Keyes, who testified that he prepared the guardian's account of the plaintiff for settlement with the probate court. The plaintiff then proposed to prove an explanation of items settled with the probate court; that the witness made the bills or schedules, and what vouchers were produced and what the plaintiff then said in explanation of his charges at the time his account was being prepared and settled. To this evidence the defendant objected, and it was admitted under objection. And the witness testified that in making out the account there was a number of items called "Stevens' bills," these were items that Stevens furnished for the wards, and he supposed the plaintiff was to pay Stevens. As they were for the plaintiff's wards, he presented them as having been paid Stevens; that in making the account he designed to have the vouchers or explanations so that the probate court would allow them; that in looking over Stevens' bills he noticed one or two, and there might have been more, that were not receipted; that he called on the plaintiff for an explanation, and the plaintiff said he had paid Stevens from time to time; that there was a settlement between them and he thought there was a balance due him, and the bills were treated as paid, and that he, the witness, so explained the matter to the probate court.

There was considerable testimony in the case bearing upon the claim for repairs, and also in regard to a claim for board and clothing for wards, which the defendant claimed was unsettled and unpaid

for two years. No books were produced relating to the accounts between the plaintiff and his wards, and none between the plaintiff and Stevens relating to the guardianship. And the referee reported that, although he was satisfied there were some matters relating to the guardianship between the plaintiff and Stevens that were not settled at the time of Stevens' decease, he was not able from the testimony to find any one item of the defendant's offset sustained by proof, except the last, which refers to the plaintiff's credit, or to satisfy himself how the accounts would stand, or which party the balance would be in favor of in the matters relating to the guardian accounts.

A large portion of the accounts in offset was satisfactorily explained, and abandoned at the hearing. The referee disallowed all of the items in offset, for want of proof, except the one relating to the plaintiff's credits, amounting to $175.21, this deducted from the sum allowed the plaintiff, leaves the balance due the plaintiff, $154.32.

The defendant excepted to the report of the referee, and assigned the following objections to its acceptance by way of exception thereto : 1st. The referee should have excluded the testimony of Mr. Asa Keyes, in accordance with the objection of the defendant. 2d. The referee should have passed upon the several items in the defendant's account and specification, and allowed or disallowed them severally, according to the testimony offered by the parties. 3d. The referee should have allowed the charges in the defendant's accounts for repairs of buildings, and for board and clothing of the wards of the plaintiff, inasmuch as the facts reported by the commissioner tendered to show the delivery of the articles and the performance of the services embraced in said charges, and that the same had never been paid or settled otherwise than by the statement of the plaintiff, made to Mr. Asa Keyes, as detailed in the report.

At the September Term, 1866, BARRETT, J. presiding, the county court accepted the report of the referee, and rendered judgment for the plaintiff for the sum reported by the referee, $154.32,—to which judgment and decision of the court the defendant excepted.

Burrows *v.* Steven's Estate.

*Field & Tyler*, for the defendant.

*H. E. Stoughton*, for the plaintiff.

The opinion of the court was delivered by

STEELE, J. The paper "*A*," was the plaintiff's account rendered in the probate court in which he had charged his wards' property with the "Stevens bills." Now, when the defendant, by way of offset, asks the plaintiff to account to the estate of Stevens for these items, the paper "*A*" clearly is evidence as an admission by the plaintiff that his wards had had of Stevens the amount of these bills and that he as guardian was once liable for them. The original validity of the bills being established the burden was on the plaintiff to prove that he had paid them. The plaintiff was himself, by statute, an incompetent witness to prove payment to the intestate. His unsworn *statement*, made out of court, to his agent, Keyes, could certainly be no *more* competent than his testimony upon oath in court, unless the statement was part of the *res gestae*. It cannot be so considered. The statement was one made *after* the alleged payment, and while Keyes was aiding the plaintiff to prepare his account for presentation to the probate court and was not made *while* the bills were being paid to Stevens or anything being done to that end. Even if it clearly appeared that the including of these items and the guardian's account by Keyes depended on the plaintiff's having claimed that they were paid, still the claim of payment would not be evidence of payment. The claim gave no significance to an act, here, in issue, if indeed it explained any contemporaneous act. It had none of the elements which would justify us in treating the words as a portion of the *res gestae* or transaction in question. No point is made but the matter of the admissibility of this testimony was so passed upon as to be a proper subject of revision in this court, and for the error in receiving it,

Judgment is reversed and cause remanded.